# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:20-CV-241-RJC-DCK

| | |
|---|---|
| CECILIA D. WALTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| CHELCE VILLINES, United States Secret Service Agent, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on the "United States' Motion To Dismiss" (Document No. 7). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be granted.

## I. BACKGROUND

Plaintiff Cecilia D. Walton ("Plaintiff" or "Walton"), appearing *pro se*, initiated this action with the filing of a "Complaint" (Document No. 1) against Defendants Calvin E. Jamerson (allegedly the father of her child), Carla Jamerson, Miller Jamerson, Chelce Villines (United States Secret Service Agent), and Judge Christy T. Mann (Mecklenburg County District Judge) on April 20, 2020. Plaintiff apparently had previously filed an administrative claim with the United States Secret Service on March 11, 2019. Id. at p. 7. The Secret Service denied her claim. Id.

The Complaint asserts claims for: (1) "[a]lienation of my parental affection;" (2) "[e]ndless investions," which the undersigned will interpret, as does the United States,[1] to mean "endless investigations;" (3) invasion of privacy by Defendant Villines because she alleges that he has been "contacting [her] doctors, disclosing [her] private information to people [she doesn't] know and to Calvin, Carla and Miller Jamerson;" and (4) "[i]ntention[al] [i]nfliction of [e]motional [d]istress." Id. at p. 4. Plaintiff's Complaint checks the boxes for both 42 U.S.C. §§ 1983 and 1985 as the alleged basis for subject-matter jurisdiction in this Court – however, as explored in more detail below, the undersigned construes Plaintiff's Complaint as attempting to allege various tort claims under the Federal Tort Claims Act. Id. at p. 1. She states that she seeks $152,000 in damages on account of Defendant Villines' conduct. Id. at p. 6.

Plaintiff's claims seem to arise from a dating relationship that she had with United States Secret Service Agent, Chelce Villines, whom she alleges she dated from September 2012 to October 2013 and then again in 2014 until she "ended it." Id. at p. 3. Plaintiff contends that Villines "somehow became friends with" Calvin, Carla, and Miller Jamerson "and [Villines] has been running I believe counterintelligence operations on [her] since at least 2013 and continuing." Id. She alleges that Villines "has used his job and working with CMPD." Id. Plaintiff also alleges that she has "headaches, migraines, heart palpitations at times, PTSD from being RAPED by [Villines] [because] [she] did not know he was in a relationship with [her] college mate Ann Pyant who introduced us but was a swinger who pimped [her] out to him for the night." Id. at p. 4.

On November 2, 2020, Plaintiff filed a "Motion To Voluntarily Dismiss Some Defendants From Suit" (Document No. 12). The effect of Plaintiff's motion (treated as a notice) is that the

---

[1] See (Document No. 7, p. 3).

sole remaining Defendant is Chelce Villines ("Defendant" or "Villines") in his official capacity as a United States Secret Service Agent.[2]

The United States filed its "Motion To Dismiss" on September 2, 2020 (Document No. 7). By the pending motion, the United States seeks dismissal of Plaintiff's claim pursuant to Federal Rules of Civil Procedure 4(i) and (m) and 12(b)(1), (2), (4), (5), and (6). Plaintiff filed an "Objection To And Response To Defendant Agent Villines Motion To Dismiss" (Document No. 9) on September 16, 2020. Plaintiff filed the identical document on September 22, 2020 (Document No. 10). The United States filed a "Reply In Support Of Motion To Dismiss" (Document No. 11) on September 23, 2020. The pending motion has now been fully briefed and is ripe for review and a recommendation to the presiding district judge.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[2] The undersigned also points out that Plaintiff still owes $320.00 in filing fees as of November 2, 2020 – the last date on which she paid a monthly installment of $20.00 towards the filing fee. The Honorable Robert J. Conrad, Jr. denied Plaintiff's "Application To Proceed In District Court Without Prepaying Fees Or Costs" (Document No. 2). In the Court's Order denying Plaintiff's Application, the Court directed Plaintiff to "pay the filing fee in monthly installments of $20 until the fee is paid in full." (Document No. 4, p. 2).

3

inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

1. **Background To The Federal Tort Claims Act**

The United States first argues in its motion to dismiss that "[a] tort lawsuit against a federal employee in his official capacity is a suit against the United States." (Document No. 7, p. 6). Indeed, under the Westfall Act, "federal employees [have] absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." Osborn v. Haley, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)). "When a federal employee is sued for wrongful or negligent conduct…[u]pon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the

4

employee…[after which] [t]he litigation is [] governed by the Federal Tort Claims Act (FTCA)." Osborn, 549 U.S. at 229-30. Plaintiff even acknowledges in her response brief to the United States' motion that she is suing Defendant Villines in his official capacity. See (Document No. 9, p. 2). Thus, since Plaintiff's Complaint alleges that she is suing Defendant Villines in his official capacity as a Secret Service Agent, her lawsuit is in effect alleged against the United States.

Under the Federal Tort Claims Act ("FTCA"), there is "a limited waiver of sovereign immunity for certain tort claims." Osmon v. United States, 2020 WL 9047166, at *6 (W.D.N.C. Dec. 7, 2020). The FTCA provides the district courts with subject-matter jurisdiction for claims "against the United States, for money damages…for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1).

This waiver of sovereign immunity does not apply, however, "to claims arising from the intentional torts of federal employees." Osmon, 2020 WL 9047166, at *6 (citing 28 U.S.C. § 2680(h)). Nonetheless, "there is an exception to the exception" for intentional torts, found in the "law enforcement proviso." Id. Under this exception, certain intentional torts committed by "investigative or law enforcement officers of the United States" can form the basis of a claim against the United States. 28 U.S.C. § 2680(h). With respect to those torts committed by investigative or law enforcement officers that can form the basis of a claim against the United States – "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" – sovereign immunity does not apply. Id. Some courts have found that the law enforcement proviso applies to Secret Service agents, and thus, as the United States indicates in its motion, if Plaintiff alleges that Villines committed one of the aforementioned torts, Plaintiff's claim "might be allowed to proceed against the United States, but only against the United States."

(Document No. 7, p. 7); see Parker v. Blackerby, 368 F. Supp. 3d 611, 619-20 (W.D.N.Y. Mar. 26, 2019); and Thomas v. United States, 2005 WL 757268, at *10, n.22 (E.D. La. Mar. 31, 2005).

### 2. Plaintiff's Claims And Fed.R.Civ.P. 12(b)(6)

Because Plaintiff's Complaint alleges claims against Defendant Villines in his official capacity as a federal employee, the lawsuit (assuming without deciding the issue that Plaintiff successfully alleges that Villines was acting within the scope of his employment) is in reality against the United States pursuant to the Westfall Act. See 28 U.S.C. § 2679(d)(1). The United States waives immunity for tort claims to the extent permitted by the Federal Tort Claims Act. However, the United States can only be sued under the FTCA for a federal employees' actions where those actions were undertaken while the employee was "acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). And "[w]hether an employee's action falls within the scope of his employment under the Westfall Act is to be determined according to the rules of respondeat superior of the state in which the wrongful conduct occurred." Jamison v. Wiley, 14 F.3d 222, 237 (4th Cir. 1994). Although from the face of the Complaint it is not entirely clear *where* each instance of the allegedly wrongful conduct in which Villines engaged took place, Plaintiff's response brief makes clear that many of the facts surrounding her claims took place in North Carolina. See (Document No. 9, pp. 1-2). Thus, as the United States suggests, "North Carolina law should apply to the issue of scope of employment." (Document No. 7, p. 11).

Under North Carolina law, an "employee acts within the scope of his employment if the employee, at the time of the incident, [was] acting in furtherance of the principal's business and for the purpose of accomplishing the duties of his employment." U.S. Tobacco Cooperative Inc. v. Big South Wholesale of Virginia, LLC, 899 F.3d 236, 249 (4th Cir. 2018) (internal quotations and citations omitted). Where, however, an employee acts merely "to carry out an independent

purpose of [his or her] own," that act is not considered within the scope of employment under North Carolina law.  Medlin v. Bass, 398 S.E.2d 460, 464 (N.C. 1990).

Here, as the United States rightly points out, "there is no viable argument that Agent Villines" carried out any of the alleged activities in Plaintiff's Complaint to further the mission of the Secret Service or as part of his duties.  (Document No. 7, p. 12).  Indeed, Plaintiff's response brief underscores that any dispute between Plaintiff and Defendant Villines is wholly personal – arising out of a past romantic relationship separate and apart from anything job-related with respect to Defendant Villines' duties as a Secret Service agent.  Plaintiff indicates that:

> she filed this action for relief due to Agent Chelce Villines['] continual harassment of her, his solicitation of and conspiracy with her child's father to 'bring her down' and not only take custody of but interfere with her parental rights as a mother but alienate her from her child, keep her unemployed, use his job to violate her 4th amendment right to use all of his job's resources to employ counterintelligence against her for his friendship with Calvin Jamerson and because she rejected his sexual advances and broke off their unconsensual relationship retroactively and literally in March, 2016.

(Document No. 9, p. 1).  As the United States opines, "[a] lawsuit in this Court should not [] transform the Court into [a] forum where persons vent disappointments over their failed dating relationships…[where] the allegations are not actionable under federal law and are either vague, conclusory, [or] incoherent."  (Document No. 11, p. 5).  Therefore,  because Plaintiff's Complaint fails to allege that Defendant Villines' actions were undertaken within the scope of his employment, and for the reasons stated below with respect to Plaintiff's distinct claims, the undersigned will respectfully recommend that Plaintiff's Complaint be dismissed for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

Even *if* Plaintiff adequately alleged that Defendant Villines was acting within the scope of [his] employment, her claims otherwise fail to satisfy the plausibility standard enunciated in

Twombly and Iqbal, as explored more fully below in the sections that follow. The United States argues that Plaintiff's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) "because, on their face, they are so overly vague or lacking coherency that they fail to articulate a cognizable claim." (Document No. 7, p. 8).

### a. Alienation Of Parental Affection Claim

As to Plaintiff's claim for alienation of parental affection against Defendant Villines, the undersigned agrees with the United States that the claim should be dismissed. The Complaint alleges no more specificity on this claim other than that Villines, together with Calvin Jamerson and his girlfriend, Charmaine, "have interfered and damaged [her] relationship" with her son by "[t]alking badly about [her] to [her son] for years." (Document No. 1, p. 4). The result, Plaintiff alleges, is that her child "refused [her] fundamental right of spring break with [her] and told [her] he did not want to visit." Id. These kinds of allegations are "too vague to withstand a dismissal motion," as the United States highlights. (Document No. 7, p. 10). Not only is Plaintiff's alienation of parental affection claim doomed for the reason that it states nothing more than "mere conclusory statements" regarding Villines' behavior, but the claim fails on Fed.R.Civ.P. 12(b)(6) for another reason. Iqbal, 556 U.S. at 678.

In North Carolina, "the tort of Alienation of Affection [is only recognized] as a tort between spouses…[t]he absence of any North Carolina law recognizing these claims against non-parent third parties is fatal" to Plaintiff's claim. Berg v. Murratti, 2017 WL 5340383, at *2 (W.D.N.C. Nov. 13, 2017). The essence of the "alienation of affections" tort "is an interference with one spouse's mental attitude toward the other, and the conjugal kindness of the marital relation." Darnell v. Rupplin, 371 S.E.2d 743, 744 (N.C. Ct. App. 1988) (internal quotations and citations omitted). Plaintiff's claim, on the other hand, alleges that Defendant Villines – not the father of

8

Plaintiff's child – interfered with her relationship with her child. That set of facts is not actionable under North Carolina law regarding the alienation of affection tort. Thus, the undersigned respectfully recommends that Plaintiff's claim for alienation of parental affection be dismissed.

### b. Endless Investigations Claim

Plaintiff's Complaint purports to state a claim for "endless investi[gat]ions," in which she alleges that Defendant has been "investigating [her], coming to [her] jobs, calling [her jobs], passing out USSS cards, setting up meetings…[and] calling [her] a fraud to try and keep [her] unemployed. Defamation." (Document No. 1, p. 4). The undersigned cannot make out exactly what tort (or torts) Plaintiff is alleging Defendant committed from this statement in the Complaint. Most of the allegations are bare, and "too vague and incoherent to survive a dismissal motion," as the United States points out. (Document No. 7, p. 8). This string of accusations against Defendant Villines does "not permit the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679.

Still, out of this litany of allegations, one decipherable tort stands out (although it, too, is conclusory and lacks plausible detail or support). The undersigned believes that Plaintiff is attempting to bring a claim for either libel or slander against Defendant Villines. The United States rightly points out that the FTCA's law enforcement proviso would bar any attempted defamation claim against the United States. (Document No. 7, p. 8). Only a specific set of intentional torts that a law enforcement official commits can form the basis of an FTCA claim against the United States – libel or slander not included. Thus, the United States is immune from suit on such claim to the extent Defendant Villines was acting pursuant to official duties (again, Plaintiff's Complaint fails on this scope of employment, point, though). And even if the United States was not immune,

Plaintiff would need to state additional facts to "nudge [her] claim[] across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

### c. Invasion Of Privacy Claim

Plaintiff attempts to state a claim against Defendant Villines for the tort of invasion of privacy, which is defined under North Carolina law "as the intentional intrusion 'physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns … [where] the intrusion would be highly offensive to a reasonable person.'" Curry v. Schletter Inc., 2018 WL 1472485, at *4 (W.D.N.C. Mar. 26, 2018).

Plaintiff alleges that Defendant Villines "has been invading [her] privacy by contacting [her] doctors, disclosing [her] private information to people [she doesn't] know and to Calvin, Carla, and Miller Jamerson." (Document No. 1, p. 4). These allegations are extremely vague and amount to nothing more than conclusory statements. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual obligations…[the] [f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Here, Plaintiff's allegations on her attempted invasion of privacy claim do not have any detail. While not a lot of detail is required at the pleading stage, these allegations are undoubtedly insufficient because they are in the style of "an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. As the United States correctly highlights, there are no "facts regarding which doctors were contacted, [when], and what information...was disclosed." (Document No. 7, p. 10). More is required to withstand a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Thus, the undersigned respectfully recommends that Plaintiff's invasion of privacy claim be dismissed.

### d. Intentional Infliction Of Emotional Distress Claim

Plaintiff claims that "Defendants have set out to intentional[ly] cause stress [through their] outrageous behavior for years and now [she] suffer[s] from migraines, anxiety, and headaches." (Document No. 1, p. 4). In order to state a claim for intentional infliction of emotional distress ("IIED") in North Carolina, Plaintiff must allege "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." Hollman v. Aiken, 668 S.E.2d 579, 590 (N.C. Ct. App. 2008) (internal quotations and citations omitted). Obviously, too, this tort "carries [an] intent requirement." Doe ex rel. Pahlke v. Blair, 2021 WL 1166767, at *5 (W.D.N.C. Mar. 26, 2021).

"[C]onclusory recitations" of Plaintiff's symptoms of her emotional distress "do not constitute factual allegations capable of supporting" a claim for intentional infliction of emotional distress. Lineberger v. Newton Police Dep't, 2016 WL 5376290, at *4, n.2 (W.D.N.C. Sept. 23, 2016). Plaintiff does not include any additional "specificity" to support her intentional infliction of emotional distress claim apart from listing such symptoms. (Document No. 7, p. 11). In order to adequately state a claim for intentional infliction of emotional distress, Plaintiff would need to allege conduct giving rise to emotional distress that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Briggs v. Rosenthal, 327 S.E.2d 308, 311 (N.C. Ct. App. 1985) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d). Extreme and outrageous conduct sufficient to state a claim for IIED would not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Id. From what is alleged with respect to her claim for intentional infliction of emotional distress, there simply is not enough from which the undersigned can "determine whether they plausibly give rise to an entitlement to relief." Iqbal,

11

556 U.S. at 679. There are no facts supporting her claim on this count – and conclusory allegations of emotional distress are insufficient to withstand dismissal.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that the "United States' Motion To Dismiss" (Document No. 7) be **GRANTED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: July 26, 2021

David C. Keesler
United States Magistrate Judge